OPINION
{¶ 1} Plaintiff-appellant-cross-appellee, Beverly Butterfield, and defendant-appellee-cross-appellant, Jeff Moyer, (hereinafter "Butterfield" and "Moyer," respectively) appeal the judgment of the Logan County Court of Common Pleas.
 {¶ 2} In 1996 Butterfield and Moyer agreed to form and operate a limited liability company for the purpose of engaging in the restaurant and food service business. The limited liability company was formed under the name of WINHO, Ltd. ("WINHO"). Pursuant to the WINHO Operating Agreement dated May 3, 1996, (the "Agreement"), Moyer held a ninety-five percent (95%) ownership interest in WINHO and Butterfield held the remaining five percent (5%) interest. In general, Moyer and Butterfield agreed that Moyer would finance a bar-restaurant, namely the "Welcome Inn" (the "Inn"), and Butterfield agreed to manage the day-to-day business of the Inn for which, as provided by Section 5.3 of the Agreement, she was to be paid a salary of $1,083.33 per month.
 {¶ 3} However, due in large part to financial difficulties, the Inn was sold to a third party in January 2003 and WINHO began the process of dissolving. WINHO realized approximately $68,000 in proceeds from the sale of the Inn, which were then deposited in a bank account in the name of WINHO, Ltd. Upon dissolution, WINHO's remaining assets, including the funds in the bank, were to be distributed pursuant to terms of the Agreement.[1]
After satisfying its liabilities to third party creditors and other obligations, Moyer and Butterfield, based upon their percentage of ownership of WINHO, received capital distributions of $37,000 and $2,000, respectively. After this initial distribution, the WINHO account maintained a balance of approximately $25,000.
 {¶ 4} Butterfield, however, was not satisfied with the distribution and filed a complaint against both Moyer and WINHO. In her complaint, Butterfield, in part, specifically asserted that she is owed $60,659.97 plus interest by WINHO for alleged unpaid back salary. Moyer and WINHO each filed answers to Butterfield's complaint and, in addition, Moyer countersued Butterfield for various personal debts allegedly owed to him by Butterfield in the amount of $42,351.36.
 {¶ 5} A bench trial before a magistrate was held on the matter. At the conclusion of the trial, the magistrate recommended that Butterfield be designated as an "interest holder who is a creditor" and is owed $60,659.97 in back wages. As to Moyer's counterclaim, the magistrate recommended that Moyer be granted judgment against Butterfield in the amount of $7,479.07. The magistrate further recommended that several assets and the capital distributions previously made to Moyer and Butterfield be returned to WINHO. Finally, the magistrate recommended that the returned assets, along with the funds remaining in the WINHO account, be redistributed according to the terms of the Agreement.
 {¶ 6} Both Butterfield and Moyer filed multiple objections to the magistrate's decision. In its December 29, 2003 decision, the Common Pleas Court of Logan County sustained one objection filed by Butterfield and one objection made by Moyer. Following its decision, the trial court, by way of judgment entry dated January, 20, 2004, modified the magistrate's decision and ordered that: Butterfield be granted judgment against WINHO in the amount of $60, 659.97 plus interest from the date of said judgment; Moyer be granted judgment against Butterfield in the amount of $6,419.07 plus interest from the date of judgment; and that Butterfield and Moyer return all capital distributions, and other assets to WINHO. In addition to these orders, the trial court, also designated Moyer to be an "interested holder who is a creditor," and further found that Moyer "is owed $121,606.06 by WINHO, Ltd. for loans he made to [WINHO]." The trial court, however, failed to grant judgment to Moyer on this finding.
 {¶ 7} Butterfield and Moyer have each appealed the trial court's judgment. Butterfield sets forth two assignments of error for our review and Moyer sets forth three assignments of error. We will address Butterfield's assignments of error first.
APPELLANT'S ASIGNMENT OF ERROR NO. I
 The trial court erred in finding that Defendant Jeff Moyer isowed $121,606.08 by WINHO, Ltd., for loans to said partnershipand designating said defendant an "interested holder who is acreditor."
 {¶ 8} In his fourth objection to the magistrate's decision, Moyer specifically asserted that the magistrate erred by failing to rule upon the issue of whether or not funds allegedly paid by Moyer to WINHO after his original capital investment constituted a "loan," or an "additional investment." In regard to this objection, Moyer demanded that the trial court issue an order finding that he has a valid claim of $121,606.06 for loans made to WINHO. The trial court sustained Moyer's objection and modified the magistrate's decision accordingly, as discussed supra. In this assignment of error, Butterfield maintains the trial court's action was in error.
 {¶ 9} A trial court's decision to modify a magistrate's report is reviewed under an abuse of discretion standard. Wadev. Wade (1996), 113 Ohio App.3d 414, 419, quoting Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219; see also Palenshus v.Smile Dental Group, Inc., 3d Dist. No. 3-02-46, 2003-Ohio-3095, at ¶ 9, citations omitted. An abuse of discretion is defined as "* * * more than an error of law or judgment [and] implies that the court's attitude is unreasonable, arbitrary or unconscionable." Id. For the reasons that follow, we find that the trial court abused its discretion by arbitrarily modifying the magistrate's decision.
 {¶ 10} Civ. R. 53(E)(4)(b) provides, in pertinent part that, "[t]he [trial] court shall rule on any objections [and] may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter. * * *." Accordingly, Civ. R. 53(E) contemplates a de novo review of any issue of fact or lawthat a magistrate has determined. (Emphasis added.)Palenshus, supra, at ¶ 8; citations omitted. However, as provided by Civ. R. 53(E)(3)(b), when a party objects to a magistrate's finding of fact, the party must supply the trial court with a transcript of the hearing or an affidavit as to the evidence presented at the magistrate's hearing. Pfeiffer v. T R Properties, Inc., 3d Dist. No. 9-02-74, 2003-Ohio-2565, at ¶ 8; citations omitted. When a party fails in this regard, the trial court is required to accept the magistrate's findings of fact and to review only the magistrate's conclusions of law. Id. In the case sub judice, Moyer failed to submit either a transcript or affidavit[s] in support of his objections.
 {¶ 11} The magistrate's finding under its heading, "Facts," is only that "[Moyer] testified that he invested $121,000.00 in the business." The magistrate also noted, "[Moyer] claimed total losses of $116,000 during this period." There is no additional factual elaboration upon the nature of these "investments" and "losses" in the magistrate's factual findings.[2] Because no transcript was filed with the trial court, this is the extent of the record from which these investments and losses can be characterized. The dictionary definition of "invest" is "to commit (money or capital) in order to gain profit or interest." The American Heritage Dictionary (2nd College Ed.). Because there is simply nothing in the record showing that the investment was anything other than the common, dictionary definition of the same, the trial court erred in concluding that the investment was, in fact, a loan. Consequently, the trial court's action in sustaining Moyer's objection and modifying the magistrate's decision to include the trial court's own, additional findings unsubstantiated by the record before it was arbitrary.[3]
Butterfield's first assignment of error is, therefore, sustained.[4]
 APPELLANT'S ASIGNMENT OF ERROR NO. II
 The trial court erred in failing to award prejudgment interestof $12,486.78 as prayed for in plaintiff's amended complaint.
 {¶ 12} In her amended complaint, dated May 19, 2003, Butterfield, in part, prayed "for judgment against defendants [Moyer and WINHO] in the sum of $58,659.97, plus interest of $12,486.78 * * *."[5] The magistrate ultimately recommended that under the WINHO Agreement, Butterfield "is owed $60, 659.97" for back salary. The magistrate, however, did not make any finding or recommendation regarding interest on the award. Butterfield objected and asserted that the magistrate erred by failing to award prejudgment interest as prayed for in her amended complaint. The trial court overruled Butterfield's objection on the grounds that the issue regarding prejudgment interest "was not argued before the magistrate and the request is now untimely." Butterfield now asserts that the trial court erred in overruling her objection and maintains that, pursuant to R.C.1343.03(A), she is entitled to prejudgment interest as a matter of law.
 {¶ 13} The award of prejudgment interest as to claims arising out of breach of contract is governed by R.C. 1343.03(A). DwyerElec., Inc. v. Confederated Builders, Inc. (October 29, 1998), 3d Dist. No. 3-98-18. In pertinent part, R.C. 1343.03(A) provides that: "* * * [w]hen money becomes due and payable upon any bond, bill, note, or other instrument of writing, * * * for the payment of money arising out of * * * a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum * * *." (Emphasis added.)
 {¶ 14} The language of R.C. 1343.03(A) is neither permissive nor ambiguous. In a breach of contract case between private parties where liability is established, the trial court does not have discretion in awarding prejudgment interest. Id. "Specifically, in cases like this one where a party has been granted judgment on an underlying contract claim, that party is entitled to prejudgment interest as a matter of law." WWRoofing Siding, Inc. v. H.P. Group, L.L.C., 3d Dist. No. 5-01-11, 2001-Ohio-2248; citing Dwyer Elec., supra.
 {¶ 15} The Supreme Court of Ohio has held that "in determining whether to award prejudgment interest pursuant to R.C. 1343.03(A) * * *, a court need only ask one question: Has the aggrieved party been fully compensated?" Dwyer Elec.,
supra; quoting Royal Elec. Constr. Corp. v. Ohio State Univ.
(1995), 73 Ohio St.3d 110, 116. In order to be fully compensated, or made whole, an aggrieved party should be compensated for the lapse of time between accrual of the claim and judgment. Id.; citing Royal Elec., 73 Ohio St.3d at 117. This is the role and purpose of prejudgment interest. Accordingly, the only issue for resolution by a trial court in claims made pursuant to R.C.1343.03(A) is how much interest is due the aggrieved party. Id. In order to determine this, the trial court must make a factual determination as to "when interest commences to run, i.e.,
when the claim becomes `due and payable,' and to determine what
legal rate of interest should be applied." (Emphasis in original.) Dwyer Elec., supra; quoting Royal Elec.,73 Ohio St.3d at 115. Thus, while the right to prejudgment interest in a contract claim is a matter of law, the amount awarded is based on the court's factual determination of an accrual date and interest rate. (Emphasis added.) Dwyer Elec., supra.
 {¶ 16} In the case at bar, Butterfield's claim for back salary is based on an alleged breach of Section 5.3 of the WINHO Agreement which provided that Butterfield was to be paid a salary of $1,083.33 per month. The trial court adopted the magistrate's recommendation and ordered that Butterfield be granted judgment against WINHO in the amount of $60,659.97 for back salary. The trial court in considering Butterfield's objection, however, failed to award Butterfield prejudgment interest on the award. Pursuant to Royal Elec., supra, and the plain language of R.C.1343.03(A), Butterfield has not been fully compensated, and she is entitled to prejudgment interest. We, therefore, sustain Butterfield's second assignment of error and remand the matter to the trial court to for a determination of the amount of prejudgment interest owed, i.e., to determine the "due and payable" date and the legal rate of interest.[6]
 {¶ 17} We next consider Moyer's three assignments of error presented for our review. For the reasons that follow, we address Moyer's assignments of error together.
CROSS APPELLANT'S ASIGNMENT OF ERROR NO. I
 The trial court erred as a matter of law by holding thatButterfield was not bound by her oral modification of theagreement.
 CROSS APPELLANT'S ASIGNMENT OF ERROR NO. II
 The trial court's judgment that Butterfield was entitled to$60,659.97 in back salary and should be designated an "interestholder who is a creditor" was against the manifest weight of theevidence.
 CROSS APPELLANT'S ASIGNMENT OF ERROR NO. III
 In the alternative, if Butterfield was entitled to back wages,then the trial court erred in concluding that Moyer was notentitled to $11,104.14 of utility reimbursement.
 {¶ 18} We have carefully considered Moyer's arguments in support of his assignments of error. However, despite Moyer's contentions to the contrary, we find that Moyer's three assignments of error involve questions of fact. Moyer failed to properly support his objections to the magistrate's decision with any transcript. "Failure to provide an acceptable record to the trial court allows the trial court to disregard any objections to the magistrate's determination on factual matters which have been challenged." Mills v. Burkey, 5th Dist. No. 2002 AP 05 0040, 2002-Ohio-6171; see also Civ. R. 53(E)(3)(b); Pfeiffer, supra. Consequently, Moyer's three assignments of error are overruled.
 {¶ 19} Based on the preceding, the judgment of the trial court is hereby reversed in part and remanded for further proceedings to vacate the portion of the trial court's January 20, 2004 judgment entry designating Moyer to be an "interested holder who is a creditor" and finding that Moyer "is owed $121,606.06 by WINHO, Ltd. for loans he made to [WINHO]," and to determine the amount of prejudgment interest to be accorded to Butterfield. In all other respects, the decision of the trial court is affirmed.
 {¶ 20} Having found error prejudicial to appellant, Beverly Butterfield, in the particulars assigned and argued, we reverse in part, and affirm in part, the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
Judgment affirmed in part, and reversed in part.
 Shaw, P.J., and Rogers, J., concur.
[1] Section 7.2 of the Agreement provides, in part, that "[o]n the winding up of the Company, the assets of the Company shall be distributed, first, to creditors of the Company, including Interest Holders who are creditors * * * and then to the Interest Holders [Moyer and Butterfield] in accordance with Section 4.4."
[2] Procedurally, the issues regarding the alleged $121,606.06 in loans were never properly before the magistrate. Moyer's counterclaim in this matter contained only one claim against Butterfield. Moyer did not seek a finding or order that WINHO was liable to him for any alleged loans until he filed his objections to the magistrate's decision with the trial court.
[3] The basis of the trial court's decision to modify the magistrate's decision can be found in its December 29, 2003 decision in which it stated that: "[Moyer] testified that heinvested $121,000 beyond his initial investment * * * [i]f this was an investment, the percentage of capital ownership should have changed and it did not. Accordingly, the Court * * * finds that the Defendant loaned the business $121,606.06." (Emphasis added.) It is unclear what evidence, if any, the trial court had before it to make this finding. None appears in the record before this court.
[4] Although the trial court's finding, without an order,
does not give Moyer an enforceable right to collect on the $121,606.06, the trial court's finding could potentially be used to substantiate a future claim made by Moyer. However, we note that pursuant to R.C. 1701.89, Moyer may still be able to present any claims or demands he may have against WINHO.
[5] In her complaint Butterfield claimed that she is owed a total of $60,659.97 in back salary. Butterfield's prayer for $58,659.97 reflects a subtraction of the $2,000.00 originally distributed to her prior to filing her complaint.
[6] Like her adversary in these proceedings, Butterfield failed to submit a transcript or affidavit[s] in support of her objections. Consequently, because the trial court may not have an adequate record before it, we acknowledge that it may be difficult for the trial court to determine the "due and payable" date[s] from which interest begins to accrue. We note, however, that the court has discretion in determining these factual matters. See, Dwyer Elec., supra; citing Cincinnati Ins. Co.v. First Natl. Bank (1980), 63 Ohio St.2d 220, ("These factual decisions will be reviewed on appeal under an abuse of discretion standard.")