HARAJLI MANAGEMENT & INVESTMENT, INC. et al., Appellees,

v.

A&M INVESTMENT STRATEGIES, INC. et al., Appellants.

[Cite as *Harajli Mgt. & Invest., Inc. v. A&M Invest. Strategies, Inc.*, 167 Ohio App.3d 546, 2006-Ohio-3052.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

Nos. L–04–1341 and L–05–1153.

Decided June 16, 2006.

Eugene Canestraro, for appellees.

John F. Potts, for appellants.

PARISH, Judge.

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, in which the trial court upheld the magistrate's denial of appellants' motion to vacate the appointment of a receiver. On appeal, appellants, A&M Investment Strategies, Inc., and Mohamad J. Ajami, set forth the following assignments of error:

{¶ 2} "I. It constituted error to prohibit appellant from: (A) offering evidence that the mortgage loan was not in default and (B) cross examining on the existence of a default after an adverse party testified on direct examination as to the existence of a default * * *.

{¶ 3} "II. It constituted error not to. apply New York Law to decide appellants' claim of a fraudulent inducement * * *.

{¶ 4} "III. It constituted error to require appellants to establish that a required condition precedent to making the loan was material to the transaction and had not been waived * * *.

{¶ 5} "IV. It constituted error to ignore appellants' claim of illegality * * *.

{¶ 6} "V. The rejection of appellants' claim of fraudulent inducement constituted error and was against the weight of the evidence * * *.

{¶ 7} "VI. It constituted error to exclude evidence of anything occurring after the mortgage loan was made * * *.

{¶ 8} "VII. The findings of the magistrate are contrary to law and unsupported by the evidence because the magistrate refused to allow evidence to be presented * * *.

{¶ 9} "VIII. It constituted error not to consider equitable defenses to appoint of a receiver * * *.

{¶ 10} "IX. It constituted error to find that appellants' response to the initial motion for appointment of receiver was untimely * * *.

{¶ 11} "X. The initial appointment of receiver on October 21, 2004 was contrary to law * * *.

{¶ 12} "XI. It constituted error not to grant a rehearing."

{¶ 13} The undisputed, relevant facts are as follows. A&M Investment Strategies, Inc. ("A&M"), a corporation formed by appellants, Mohamad Ajami and

Zainab A. Dakroub, owns real estate at 350 W. Bancroft Street in Toledo, Ohio. In 2000, Ajami and Dakroub asked Ajami's brother-in-law, appellee Hassan Harajli, for help in financing the remodeling of a gas station and convenience store at the Bancroft site. Harajli agreed to obtain financing and to guarantee a loan from Sun Oil Company ("Sunoco") and its financing institution, Citicorp, in exchange for becoming appellants' sole supplier of motor-fuel inventory.

{¶ 14} Prior to obtaining the loan, appellants and Harajli prepared a loan application that included projections for the sale of gasoline, diesel fuel, and convenience-store items. In June 2000, appellants obtained loans totaling $584,000 from Sunoco and its financing agent, Citicorp, which were secured by two promissory notes, an unrestricted line of credit, and a mortgage on the gas station. Attached to the loan documents was a "guaranty rider" in which Harajli unconditionally guaranteed "the prompt payment and performance of the Secured Obligation (and all extensions and renewals thereof) and of all sums stated or agreed to be payable therein, when due, at maturity, by acceleration or otherwise."

{¶ 15} After obtaining the loan and completing renovations, appellants opened the gas station for business. However, motor-fuel sales never reached the volume projected in the loan application, and appellants soon experienced cash-flow problems. In addition, a dispute arose as to whether Harajli was overcharging appellants for motor fuel, which became more intense after appellants discovered that Harajli did not have a license to sell motor fuel in Ohio.

{¶ 16} In November 2003, appellants stopped making the scheduled mortgage payments. On March 9, 2004, Sunoco and Citicorp sent appellants and Harajli notice that the mortgage was in default. In response, Harajli paid the outstanding balance on the loan and, on May 4, 2004, Sunoco assigned the mortgage to Harajli Management & Investment, Inc.[1]

{¶ 17} On May 10, 2004, Harajli filed a foreclosure complaint in the Lucas County Court of Common Pleas against appellants.[2] On October 4, 2004, Harajli filed a motion for the appointment of a receiver.[3] On October 21, 2004, appellants filed a motion for additional time to respond to Harajli's motion to appoint a

---

**1.** Since bringing this lawsuit, the name of Harajli Management & Investment, Inc. has been changed to Fusion Oil.

**2.** The Lucas County Auditor was also included as a defendant due to outstanding taxes on the property. An additional defendant, the Oscar W. Larson Co., was dismissed on June 11, 2004.

**3.** Also on October 4, 2004, Harajli filed a motion for summary judgment pursuant to Civ.R. 56, which appellants opposed on December 21, 2004. That motion has not been decided by the trial court, pending resolution of the issues presented in this appeal.

receiver; however, the trial court overruled appellants' motion and appointed a receiver on October 22, 2004.

{¶ 18} On October 28, 2004, with leave of court, appellants filed a counterclaim in which they alleged that Harajli had engaged in fraud and corrupt activity. On November 4, 2004, appellants filed a motion to vacate the appointment of a receiver and a memorandum in support thereof and an alternative motion to stay the receiver's appointment pending an evidentiary hearing. The stay was granted on November 5, 2004. On November 9, 2004, appellants filed a supplemental motion in opposition, to which Harajli filed a reply.

{¶ 19} A two-day evidentiary hearing was held before a court-appointed magistrate[4] on November 12 and December 17, 2004. Testimony was presented at the hearing by appellee, Hassan Ali Harajli; Lisa Fedon, operations manager for Harajli Management & Investment, Inc.; appellant Mohamad Ali–Jamil Ajami; appellant Zainab Ali Dakroub and her father, Ali Fahed Dakroub; and Leroy John Kozlaker, sales manager and part owner of State Line Oil Company.

{¶ 20} On the first day of testimony, the magistrate stated that the purpose of the hearing was to determine whether the mortgage held by Harajli was valid, followed by a further determination as to whether a receiver should have been appointed. Thereafter, Harajli testified that at the time the mortgage and promissory notes were signed, he was a seller of retail gasoline products in Michigan. Harajli further testified that he agreed to guarantee appellants' loan and supply them with gasoline products for sale as a favor to Ajami's wife, who is Harajli's sister. Harajli stated that the financial projections in the loan application were prepared by his accountant, Kevin Howlett, based on numbers provided by appellants. Harajli further stated that he did not discover that he needed a license to sell gasoline products in Ohio until after appellants began operation of the station.

{¶ 21} Fedon, a licensed notary in the state of Michigan, testified that she was present when the loan documents, including the mortgage, were signed. Fedon further testified that she witnessed and notarized Ajami's signature on the documents; however, she did not remember whether appellant Zainab Dakroub was present at the signing.

{¶ 22} Zainab Dakroub testified at the hearing that she had never met Fedon, and the signature on the Motor Fuel Supply Agreement did not look like her signature. However, Dakroub verified her signature on the promissory notes and stated that she must have signed them at her home. On cross-examination,

---

4. The record reflects that this case was assigned to Lucas County Common Pleas Judge Charles Wittenberg, who appointed his law clerk, Joanne Horen, to serve as magistrate for the purpose of holding an evidentiary hearing.

Dakroub stated she was not sure exactly which documents she signed. On redirect, Dakroub testified that she had almost no input into the content of the loan documents.

{¶ 23} Kozlaker testified that he has extensive experience in managing fuel centers, training personnel to run gasoline stations, and making revenue projections. Kozlaker stated that he is familiar with appellants' station and, in his opinion, appellants' financial projections were unrealistic based on the amount of traffic on Bancroft Street, the type of neighborhood, and the station's proximity to two other fuel stations.

{¶ 24} The last person to testify on November 12 was appellant Mohamad Ajami, who stated that he relied on Harajli to prepare the loan documents because he does not speak or write English well. Ajami also stated that he did not sign the loan application. Ajami testified that Harajli agreed to help appellants obtain the loan, and in return, appellants agreed to purchase fuel only from Harajli; however, they could not price the fuel competitively because Harajli's wholesale price was too high. Ajami stated that he found out Harajli was not licensed to sell fuel in Ohio sometime after the loan was obtained.

{¶ 25} Ajami testified that the loan proceeds were placed in his personal checkbook. He then signed checks in blank and gave them to Harajli, who paid the bills. Ajami further stated that Harajli used his own workers to renovate the gas station instead of hiring outside contractors at a cheaper price. Ajami also stated that Harajli told him that the loan proceeds would be sufficient to "cover everything"; however, mechanics liens were later placed on the property because Harajli did not pay all the contractors.

{¶ 26} On cross-examination, Ajami testified he did not know how Harajli obtained the loan. Ajami stated that in his opinion, Harajli committed "fraud" by depositing the checks into Harajli's own business account, instead of using them to complete the renovation.

{¶ 27} At the close of testimony on November 12, the matter was continued for further hearing on Tuesday, November 16. However, before the second day of hearings could take place, Ajami was hospitalized after being severely beaten outside his home. The continued hearing was rescheduled for December 17, 2004, at which time appellants' attorney asked for another continuance due to Ajami's ill health. The magistrate denied the request because Ajami's attorney did not have an affidavit from a doctor stating why Ajami could not attend the proceeding.

{¶ 28} On November 19, 2004, appellants filed a notice of appeal from the trial court's appointment of a receiver on October 22, 2004 ("appellate case No. L–04–

1341"). On December 7, 2004, the case was remanded to the trial court, pending resolution of appellants' motion to vacate.

{¶ 29} Testimony was presented at the December 17 hearing by Harajli and Ali Dakroub. Harajli testified that he had agreed to help secure the loan because Ajami, Zainab, and Ali Dakroub had "nagged" him. Harajli further testified that he was notified by Citicorp and Sunoco that the loans were in default in March 2004, and he paid off the debt in May 2004. Harajli stated that the foreclosure action was filed because appellants made no payments on the loan after it was assigned to him.

{¶ 30} On cross-examination, Harajli testified that the financial projections used to secure the loan were estimates of what he thought or what he hoped that the station would reach based on his own experience. He further testified that six months after opening the station, appellants began purchasing fuel from another distributor. Harajli admitted that he had no proof that appellants were notified that Harajli had purchased the loans from Citicorp and Sunoco.

{¶ 31} In rebuttal, Ali Fahed Dakroub testified that he lent his daughter money to go into business with Ajami. Ali stated that his only experience operating a gas station was as part-owner of a Michigan station some years ago. Ali further testified that Ajami does not read or write English well and that Harajli is much more experienced than appellants in operating and financing a gas station.

{¶ 32} On January 12, 2005, the magistrate found, based on the testimony and exhibits presented at the hearing, that the mortgage was valid. The magistrate further found "that the appointment of a receiver is necessary for the preservation of rights" and denied appellants' motion to vacate the receiver's appointment.

{¶ 33} Appellants filed objections to the magistrate's decision on January 26, 2005, which appellees opposed. On April 8, 2005, the trial court overruled appellants' objections and affirmed the magistrate's decision. A timely notice of appeal was filed on May 4, 2005. On May 16, 2005, this court reinstated the first appeal to its docket and consolidated the two cases.

{¶ 34} We note at the outset that the trial court is empowered to appoint a receiver "where there is evidence tending to prove the facts essential to sustain the order." *Jensen v. Zanesville Heart Specialists, Inc.*, 5th Dist.App. No. CT2003–0043, 2004-Ohio-873, 2004 WL 362231, ¶ 14, citing 65 American Jurisprudence 2d (1972), 873, 874, Receivers, Section 19, 20. On appeal, the trial court's decision will not be overturned absent a "clear abuse of discretion." Id., citing *State ex rel. Celebrezze v. Gibbs* (1991), 60 Ohio St.3d 69, 73, 573 N.E.2d 62. An abuse of discretion connotes more than a mere error of law or judgment, instead requiring a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217,

219, 5 OBR 481, 450 N.E.2d 1140. In this context, we will now examine appellants' 11 assignments of error.

{¶ 35} At the hearing, the magistrate first addressed whether the mortgage was valid, followed by a determination that the mortgage was not in default. Accordingly, we will first address appellants' second, third, fourth, fifth, and sixth assignments of error, in which appellants collectively argue that evidence proffered at the hearing, if allowed, would have shown that the mortgage is invalid. Next, we will address appellants' first assignment of error, followed by appellants' remaining assignments of error in numerical order.

{¶ 36} The decision to admit or exclude evidence is within the sound discretion of the trial court and will not be reversed on appeal absent a finding of abuse of discretion. *Homler v. Homler*, 9th Dist. No. 05CA008752, 2006-Ohio-2556, 2006 WL 1409801, at ¶ 14. An abuse of discretion is more than an error in judgment; it demonstrates " 'perversity of will, passion, prejudice, partiality, or moral delinquency.' " Id., quoting *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. "When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court." Id.

{¶ 37} It is well established that a valid mortgage "contain[s] a description of the obligation it is intended to secure." (Citations omitted.) *Sease v. John Smith Grain Co., Inc.* (1984), 17 Ohio App.3d 223, 227, 17 OBR 489, 479 N.E.2d 284. The instrument need not list the exact amount of money to be repaid or how that amount is to be calculated so long as it "clearly states that the mortgage was conveyed as security for the payment of money due from one party to the other." Id., citing *Hurd v. Robinson* (1860), 11 Ohio St. 232, 235.

{¶ 38} In this case, appellants do not assert that the mortgage improperly described the debt. In addition, Ajami testified that appellants received the mortgage proceeds in return for executing the promissory notes and mortgage.[5] Therefore, the mortgage is "valid" on its face. Nevertheless, appellants argue that the trial court should have found the mortgage to be "invalid" because (1) appellants were fraudulently induced into obtaining the loan and (2) the Fuel Supply Agreement was "illegal" because Harajli did not have a license to sell fuel in Ohio.

---

5. As set forth above, Ajami testified that the loan proceeds went into his bank account, from which Harajli paid for the renovation of the gas station. Accordingly, we reject appellants' assertion that Harajli's alleged "skimming" of the loan proceeds prevented them from actually receiving the proceeds of the loan.

{¶ 39} Claims of fraud and illegality are affirmative defenses. *Resolution Trust Corp. v. Bruce Edward Commt.* (Dec. 17, 1992), 8th Dist. No. 63950, 1992 WL 388930; *ABN AMRO Mtg. Group v. Meyers,* 159 Ohio App.3d 608, 2005-Ohio-602, 824 N.E.2d 1041. An affirmative defense by its very nature "acts as a confession and avoidance" by admitting " 'for pleading purposes only that the plaintiff has a claim (the "confession"), but assert[ing] some legal reason why the plaintiff cannot have any recovery on that claim (the "avoidance").' " Id. at ¶ 13, fn. 3, quoting *Wurts v. Gregg* (Jan. 28, 2000), Montgomery App. No. 17682, 2000 WL 84660. Accordingly, while the affirmative defenses of fraudulent inducement and illegality may, in a proper case, be asserted to prevent *enforcement* of a mortgage in a foreclosure action, they may not be used to *invalidate* a mortgage. See *Resolution Trust Corp. v. Bruce Edward Commt.,* supra.

{¶ 40} In a further attempt to bolster their fraud claim, appellants assert that New York law, not Ohio law, should be applied in this case. In support, appellants cite the two promissory notes and an "Uncommitted Restricted Line of Credit and Security Agreement," all of which contain the following provision:

{¶ 41} "This note shall be governed by, and construed in accordance with, the law of the State of New York, United States of America."

{¶ 42} However, paragraph 4.8 of the mortgage instrument, which is the subject of this appeal, states:

{¶ 43} *"Governing Law.* This Mortgage shall be a contract made under and governed by the internal laws *of the State where the Premises are located."* (Emphasis added).

{¶ 44} As set forth above, the premises referred to in the above-quoted mortgage document are located at 350 W. Bancroft Street in Toledo, Ohio. Accordingly, by agreement of the parties, New York law does not apply to the specific issues raised in this appeal.

{¶ 45} In addition, even if New York law did apply, the result would be the same. Under New York law, "fraudulent inducement is a valid defense to an action by the holder of a negotiable instrument to *enforce* the instrument." (Emphasis added.) *Thornock v. Kinderhill Corp.* (S.D.N.Y.1990), 749 F.Supp. 513, 518. As set forth above, while appellants may use fraud as an affirmative defense against *enforcement* of the mortgage, they may not use it to *invalidate* the mortgage.

{¶ 46} On consideration of the foregoing, we hold that the trial court did not apply the wrong law in this case or otherwise abuse its discretion by refusing to allow appellants to present evidence as to fraud or illegality at a hearing to determine the validity of the mortgage. Appellants' second, third, fourth, fifth, and sixth assignments of error are not well taken.

{¶ 47} In support of their first assignment of error, appellants argue that the trial court erred by not allowing them to present evidence at the hearing to show that the mortgage was not in default. Specifically, appellants argue that the evidence would have shown that Harajli "skimmed" $393,000 of the loan proceeds, engaged in illegal sale of fuel in Ohio, and placed fraudulent mechanics liens on the property. Appellants also argue that they should have been allowed to present evidence of their attempt to "cure" any existing default in March 2005. Appellants further argue that they were erroneously prevented from cross-examining Harajli after he testified that the mortgage was in default.

{¶ 48} Paragraph 3.3 of the Mortgage allows the court to appoint a receiver "[u]pon the occurrence of any Event of Default * * *." Paragraph 2.1(a), Article II of the Mortgage states that a default occurs if the mortgagor "shall fail to pay, when due, any amount required hereunder or under the Note, the Agreement or any Loan Document, and such failure shall continue for five (5) business days after notice of such failure by Mortgagee."

{¶ 49} It is undisputed that appellants stopped making regular mortgage payments to Citibank in November 2003. The record, which includes appellants' proffered evidence and their objections to the magistrate's decision, shows, at best, that appellants attempted to make only partial payments in March 2004 in an ineffective attempt to "cure" any existing default. In addition, as set forth above, appellants' claims that Harajli "skimmed" loan proceeds, or otherwise engaged in fraudulent behavior, cannot be used to invalidate the mortgage. Accordingly, any error in the exclusion of such evidence was harmless. Appellants' first assignment of error is not well taken.

{¶ 50} In their seventh assignment of error, appellants assert that the magistrate's findings are "contrary to law and unsupported by the evidence." In support, appellants essentially repeat several of the arguments advanced in their first six assignments of error. Specifically, appellants reiterate that they were erroneously deprived of the opportunity to present evidence on the issues of fraud, illegality, and default. Based on our determinations as to appellants' first six assignments of error, we hold that appellants' seventh assignment of error is not well taken.

{¶ 51} In their eighth assignment of error, appellants assert that they should have been allowed to present evidence of the property's value, as set forth in R.C. 2735.01, along with other "equitable defenses." In support, appellants argue that the process of appointing a receiver is governed exclusively by R.C. 2735.01(B).

{¶ 52} R.C. 2735.01 provides that a receiver may be appointed:

{¶ 53} " * * *

{¶ 54} "(B) In an action by a mortgagee, for the foreclosure of his mortgage and sale of the mortgaged property, when it appears that the mortgaged property is in danger of being lost, removed, or materially injured, or that the condition of the mortgage has not been performed, and the property is probably insufficient to discharge the mortgage debt.

{¶ 55} " * * *

{¶ 56} "(F) In all other cases in which receivers have been appointed by the usages of equity."

{¶ 57} The specific requirements set forth in R.C. 2735.01 may be effectively waived by the parties if such waiver is expressed in a mortgage provision. *Mfrs. Life Ins. Co. v. Patterson* (1988), 51 Ohio App.3d 99, 100, 554 N.E.2d 134; *Fed. Land Bank of Louisville v. DeRan* (1944), 74 Ohio App. 365, 29 O.O. 516, 59 N.E.2d 54. See, also, *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.* (1999), 86 Ohio St.3d 270, 273, 714 N.E.2d 898 (generally, contracts should be construed in a manner to give effect to the intentions of the parties. Id., citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920). In this case, Paragraph 3.3, Article III of the mortgage allows the trial court, in the event of default, to appoint a receiver "upon application of the Mortgagee or at any time thereafter, * * * without notice to the Mortgagor * * * and without regard to the solvency or insolvency at the time of such application of any Person then liable for the payment of any of the Secured Obligations, [and] without regard to the then value of the Premises * * *."

{¶ 58} On consideration of the foregoing, including our prior determination that the mortgage was, indeed, in default, we hold that the parties waived the right to a determination of the value of the property. Accordingly, the trial court did not err by affirming the magistrate's decision not to hear evidence as to that issue. Appellants' eighth assignment of error is not well taken.

{¶ 59} In their ninth assignment of error, appellants assert that the trial court erred by denying their motion for additional time to respond to Harajli's motion to appoint a receiver because it was untimely filed. Appellants state that their response was timely filed on October 21, 2004, 17 days after Harajli's motion was filed. In support, appellants cite Lucas County Common Pleas Court Loc.R. 5.04(D), which requires a party to respond to a motion within 14 days, and Civ.R. 6(E), which adds three days to the prescribed period, to allow for service by mail. In addition, appellants argue that their request for additional time should have been granted because the trial court was "personally aware" of the busy schedule of appellants' counsel.

{¶ 60} As set forth above, the initial appointment of a receiver was stayed pending an evidentiary hearing. In addition, appellants appealed the trial

court's original appointment of a receiver, resulting in this consolidated appeal. Clearly, by this point, appellants have had ample opportunity to respond to the issues raised in the motion to appoint a receiver. Accordingly, any issue as to whether the trial court erred by denying appellants' request for additional time to respond has become moot. Appellants' ninth assignment of error is not well taken.

{¶ 61} In their tenth assignment of error, appellants assert that the initial appointment of a receiver on October 21, 2004, was "contrary to law." In support, appellants argue that the motion to appoint a receiver, filed on October 4, 2004, was flawed because it did not contain an allegation of default.

{¶ 62} The record shows that Harajli filed a foreclosure action against appellants on May 10, 2004, case No. CI0200403041. Paragraph 18 of the complaint states that appellants "are in default * * * and there is due and owing to Plaintiff * * * the sum of $514,851.85." The motion for appointment of a receiver was filed in the Court of Common Pleas on October 4, 2004, in case No. CI0200403041. The first paragraph of the motion asks the trial court "for an Order appointing a Receiver for the real estate, *which is the subject matter of this foreclosure action,* located at 350 Bancroft Street, Toledo, Ohio." (Emphasis added). Appellants' tenth assignment of error is totally frivolous and is not well taken.

{¶ 63} In their 11th assignment of error, appellants argue that "[g]iven the nature, number and cumulative effect of the unusual and irregular rulings made by the Magistrate, the judge should have conducted a re-hearing, pursuant to Civ.R. 53(E)(4)(b)." Specifically, appellants assert that the trial court erred by affirming the magistrate's denial of a continuance of the December 12 hearing and rejecting appellants' request for a "re-hearing."

{¶ 64} Civ.R. 53(E)(4)(b) provides that the trial court "shall rule on any objections [and] the court may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter." The trial court's decision to modify or adopt the magistrate's report is reviewed on appeal under an abuse-of-discretion standard. *Butterfield v. Moyer,* 3d Dist. No. 8-04-04, 2004-Ohio-5891, 2004 WL 2496846, at ¶ 9, citing *Wade v. Wade* (1996), 113 Ohio App.3d 414, 419, 680 N.E.2d 1305.

{¶ 65} From our review of the entire record, it is apparent that the proceedings before the magistrate were unnecessarily lengthy, given the nature of the relevant issues before the trial court. However, the record also shows that the trial court adopted the magistrate's recommendations after reviewing transcripts of the November 12 and December 17 hearings. Those transcripts reveal that while the magistrate refused to allow evidence to be presented on several issues raised by appellants, she did allow appellants to proffer such evidence upon

request. However, in the case of Ajami's rebuttal testimony, the transcript shows that while appellants' counsel attempted to obtain a further continuance due to Ajami's slow recovery, he did not ask to proffer the content of Ajami's testimony.

{¶ 66} Upon consideration of the foregoing and our determinations as to appellants' first 10 assignments of error, we cannot say that the trial court abused its discretion by refusing to either modify the magistrate's report or to hold a re-hearing in this case. Appellant's 11th assignment of error is not well taken.

{¶ 67} The judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal for which sum judgment is rendered against appellants on behalf of Lucas County and for which execution is awarded. See App.R. 24.

Judgment affirmed.

HANDWORK and PIETRYKOWSKI, JJ., concur.