[Cite as *Fannie Mae v. Clarkwood Apts., L.P.*, 2025-Ohio-5221.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

FANNIE MAE,                                  :

    Plaintiff-Appellee,              :

                            Nos. 114542, 114543 and
    v.                                           :                        115105

CLARKWOOD APARTMENTS LP,
ET AL.,                                      :

    Defendants-Appellants.           :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 20, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CV-24-105655, CV-24-105649, and CV-24-104487

---

### *Appearances:*

Bricker Graydon LLP, William D. Mason, Justin W. Ristau, and Sebastian D. West, *for appellee* Fannie Mae.

Roetzel & Andress LPA, and Benjamin Grant Chojnacki, *for appellee* Warrensville Heights.

The Legal Aid Society of Cleveland, Catherine R. Donnelly, Zoe M. Suntheimer, and Barbara A. Reitzloff, *for appellee* Granada Gardens Tenant Association.

The Lindner Law Firm, LLC, Daniel F. Linder, and Jacob A. Re, *for appellants.*

DEENA R. CALABRESE, J.:

{¶ 1} Defendants-appellants Clarkwood Apartments LP ("Clarkwood") and Granada Apartments, Ltd. ("Granada") appeal orders from the trial court appointing a receiver, denying a motion to vacate appointment of a receiver, and setting the receiver's bond, and they challenge the subject-matter jurisdiction of the trial court. For the reasons set forth below, we affirm the trial court's orders appointing receivers in the foreclosure actions.

## I. Relevant Facts and Procedural History

{¶ 2} This consolidated appeal stems from three separate cases filed with the Cuyahoga County Common Pleas Court. At the center of the disputes are two identical sets of multifamily loan and security agreements, multifamily notes, and open-end multifamily mortgages (collectively "loan documents" or "loan packages") entered into in 2019 involving properties located in the City of Warrensville Heights, Ohio. On October 11, 2019, Clarkwood entered into an agreement with Orix Real Estate Capital, LLC ("Orix") whereby they borrowed $29,239,000 to purchase the Clarkwood Greens Apartments located at 4761 Walford Road, Warrensville Heights, Ohio. On the same date, Granada entered into an agreement with Orix whereby they borrowed $40,250,000 to purchase the Granada Gardens Apartment Complex located at 4340 Clarkwood Parkway, Warrensville Heights, Ohio.

{¶ 3} Orix later changed its name to Lument Real Estate Capital, LLC, then assigned the loan packages to appellee Federal National Mortgage Association ("Fannie Mae"). Lument continued to service the loans.

{¶ 4} On May 31, 2023, Fannie Mae sent Granada a notice of demand. The notice required Granada to cure physical defects at the Granada Apartments and deposit $4,176,810 to secure performance of the repairs. On August 2, 2024, Fannie Mae sent Granada a default and acceleration letter. The letter listed as events of default Granada's failure to complete repairs required by the May 31 notice, including repairs related to balconies, exterior doors and fire doors, and smoke and carbon monoxide detectors that posed fire safety issues; a judgment lien that was entered against Granada related to the property; failure to notify Fannie Mae that the property had become subject to building code or zoning code violations; failure to notify Fannie Mae of a casualty or loss or remit the insurance proceeds to Lument; and an unauthorized change of collateral on the property when garages were demolished without Fannie Mae's approval.

{¶ 5} On June 13, 2023, Fannie Mae sent Clarkwood a notice of demand. The notice identified deficiencies in the condition of the property and demanded that Clarkwood cure physical defects, defined as additional lender repairs and additional lender replacements, at the Clarkwood Apartments and deposit $1,021,810 to secure performance of the repairs. The parties amended the loan to incorporate the additional lender repairs and additional lender replacements as a required repair schedule with a deadline of June 30, 2024, to complete the repairs.

{¶ 6} On August 2, 2024, Fannie Mae sent Clarkwood a default and acceleration letter. The letter listed as events of default the failure to complete the required repairs by the deadline, cracked concrete walkways that posed a serious

safety risk, failure to notify Fannie Mae that the property had become subject to building code or zoning code violations, and an unauthorized change of collateral on the property when garages were demolished without Fannie Mae's approval.

{¶ 7} On September 26, 2024, Clarkwood and Granada filed a declaratory-judgment action against Lument Real Estate Capital LLC in the Cuyahoga County Common Pleas Court ("Lument case"). The complaint requested that the trial court declare that Clarkwood and Granada were not in default under their respective loan documents, that any evidence of default was caused by Lument, and that Lument may not manufacture defaults against Clarkwood and Granada. The complaint also asked the trial court to declare that Lument was required to place Clarkwood and Granada back in performing loan status and that Lument was to timely inspect repairs.

{¶ 8} On October 17, 2024, approximately one month after the Lument case was filed, Fannie Mae filed two separate foreclosure actions (collectively the "foreclosure actions") in the Cuyahoga County Common Pleas Court.[1] One case was filed against Clarkwood and the other case was filed against Granada. The claims in the two cases were identical to each other. On the same day that Fannie Mae filed the foreclosure actions, Fannie Mae also filed ex parte motions for a receiver in each case. The motions asserted that a receiver should be appointed pursuant to the language in the loan documents and R.C. 2735.01(A)(2), (A)(3), and (A)(7).

---

[1] Both cases included additional parties who are not parties to these appeals.

{¶ 9} On October 22, 2024, the trial court in the foreclosure actions granted Fannie Mae's ex parte motions for immediate appointment of receiver.[2]  Bond was set at $10,000 for each property.  On October 31, 2024, Clarkwood and Granada filed emergency motions to dismiss and motions to vacate the orders granting appointment of a receiver for lack of subject-matter jurisdiction.  On November 7, 2024, the trial court in the foreclosure actions held a hearing on Clarkwood's and Granada's motions.  The trial court's journal entry in each case stated, in relevant part:

> After argument on the record, the court finds that the receiver was properly appointed based upon irreparable harm.  [Clarkwood's or Granada's] motion to vacate is hereby denied.  Receiver bond is reset at $100,000.  Receiver is to cease work until bond is paid. [Clarkwood's or Granada's] emergency motion to dismiss remains pending. Responses due pursuant to rule.

{¶ 10} The trial court never ruled on Clarkwood's and Granada's motions to dismiss for lack of jurisdiction.  On November 9, 2024, Clarkwood and Granada filed notices of appeal in their respective cases appealing the trial court's October 22, 2024 and November 7, 2024 orders in the foreclosure actions.  On February 7, 2025, this court granted Clarkwood's and Granada's emergency motions to stay enforcement of the receivership order.

{¶ 11} Returning to the Lument case, on October 25, 2024, Lument filed a motion to dismiss asserting that it was not the real party in interest because the loans were assigned to Fannie Mae.  On February 17, 2025, in response to that motion and

---

[2] A number of additional motions were filed in the three cases, but they are not relevant to this appeal.

after the trial court granted leave, Clarkwood and Granada filed a first amended complaint in the Lument case adding Fannie Mae as a defendant. On March 12, 2025, Fannie Mae filed an answer to the amended complaint and counterclaims in the Lument case. The counterclaims were identical to the claims Fannie Mae filed against Clarkwood and Granada in the foreclosure actions.

{¶ 12} On the same day, Fannie Mae filed separate motions for appointment of a receiver in the Lument case pursuant to the language in the loan documents and R.C. 2735.01(A)(2), (A)(3), and (A)(7).

{¶ 13} On May 7, 2025, the trial court issued two separate but identical orders granting Fannie Mae's motions to appoint a receiver for the Clarkwood and Granada properties, respectively. The trial court's orders set the bond amount at $10,000 for each property.

{¶ 14} The trial court also made the following findings:

> The loan documents are the same for each plaintiff. Section 3(e) of each mortgage provides, in pertinent part:
>
>> If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Security Instrument, expressly consents to the appointment of such receiver[.]
>
> *Complaint*, Exhibit IC and Exhibit 2C, page 9.
>
> "Event of Default" is the occurrence of any event listed in Section 14.01 of the Loan Agreement. That section sets out three categories of events of default: automatic; subject to a specified cure period; and subject to an extended cure period. One event of default that is subject to an extended cure period is "any failure by Borrower to perform any of its obligations under this Loan Agreement or any Loan Document."

Complaint, Exhibit 1A, p. 76.  Fannie Mae describes the alleged events of default in its motion to appoint a receiver:

> On or about December 13, 2023, Counterclaim-Defendant Boruch Drillman, who guaranteed the Loan Agreements ("Drillman") pleaded guilty to engaging in an extensive multi-year conspiracy to fraudulently obtain over $165 million in loans and fraudulently acquire multifamily and commercial properties. The guilty plea was entered in the United States District Court for the District of New Jersey, Case Number 3:23-cr-01053.  According to court documents and U.S. Department of Justice press releases, between 2018 and 2020, Drillman was accused of conspiring with at least four others to deceive lenders into issuing multifamily and commercial mortgage loans. Drillman and his coconspirators allegedly provided the lenders with fictitious documents, including purchase and sale contracts with inflated purchase prices. Based on these charges, Drillman pleaded guilty to one count of conspiracy to commit wire fraud affecting a financial institution.
>
> Importantly, Drillman is the Guarantor on both the Clarkwood and Granada Loans. He was the sole member of Paxe Cleveland, which has exclusive control of both the Clarkwood and Granada entities. Borrowers responded to Drillman's guilty plea by committing additional covenant violations. First and foremost, Borrowers failed to provide written notice to Fannie Mae of the criminal proceedings, in **violation of §4.02(f) of the Loan Agreement.** Second, the Borrowers transferred property management services from the approved property management company to a new, unauthorized property management company (i.e. Ohaven Management Group LLC) in **violation of §6.03(a) of the Loan Agreement.** Finally, Borrowers transferred control of the Borrowers from Drillman to certain Canadian investors. The transfer of a direct or indirect ownership interest in Borrowers causing a change in Control is *__a violation of the Borrowers' covenants under §11.02(b) of the Loan Agreement.__*

Defendant's 3/12/2025 Motion to appoint a receiver, p. 15-16. (Emphasis in italics and bold added.)

The three violations described here are clearly failures by a "Borrower to perform any of its obligations under [the] Loan Agreement or any

Loan Document," thus Clarkwood and Granada have consented to the appointment of a receiver.

Fannie Mae's March 12, 2025 motion to appoint a receiver is therefore granted.

{¶ 15} On the same day, Clarkwood and Granada filed an appeal of these orders in the Lument case. On June 10, 2025, this court denied Clarkwood and Granada's motion to extend the existing stay of enforcement of receivership to the Lument case on appeal.

{¶ 16} Clarkwood's and Granada's appeals of the foreclosure actions raise the following assignments of error for our review:

> 1. At all times material, the second case trial court lacked subject matter jurisdiction over all matters between appellants and appellee because another earlier court of competent jurisdiction exercised jurisdiction in the disputes between the same parties, the same loans, the same claimed loan defaults and the same real property involved in this lawsuit. The order appointing a receiver should be immediately vacated as void ab initio and this second case should be dismissed.
>
> 2. Separate and distinct from the second case court absolutely and unconditionally lacking any jurisdiction to act against appellants due to the prior case's jurisdiction priority, the second case court also did not have any evidence before it to permit for the appointment of a receiver-let alone the ex parte appointment of a receiver.
>
> 3. Separate and distinct from the second case court absolutely and unconditionally lacking any jurisdiction to act against [Clarkwood or Granada] due to the prior case's jurisdictional priority , and despite the lack of any evidence to support the granting of any receivership, the second case trial court also abused its discretion by appointing a receiver over $100 million in properties with only a $100,000 per property bond.

{¶ 17} Clarkwood and Granada's appeal of the Lument case raises the following assignments of error for review: [3]

[4]. The trial court did not have any evidence before it to make any finding of default by Clarkwood and/or Granada, or that would support the appointment of a receiver. A receiver cannot be appointed without clear and convincing evidence that a loan default occurred, that there is an immediate risk of irreparable harm and that the property is in danger of being lost, removed or materially injured.

[5]. Despite the lack of any evidence to support the granting of any receivership, the trial court also abused its discretion by appointing a receiver over $100 million in properties with only $10,000 per property bond.

## II. Law and Analysis

### A. Final Appealable Orders

{¶ 18} As a preliminary matter, before considering the merits of Clarkwood and Granada's appeal, we must determine whether we have jurisdiction to hear the appeal.

{¶ 19} Pursuant to Ohio Const., art. IV, § 3, "[c]ourts of appeals shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district[.]" "In the absence of a final, appealable order, the appellate court does not possess jurisdiction to review the matter and must dismiss the case sua sponte." *Deutsche Bank Natl. Co. v. Caldwell*, 2011-Ohio-4508, ¶ 6 (8th Dist.),

---

[3] The two assignments of error in the Lument case have been renumbered 4 and 5 for clarity.

citing *St. Rocco's Parish Fed. Credit Union v. Am. Online*, 2003-Ohio-420, ¶ 9 (8th Dist.).

{¶ 20} Pursuant to R.C. 2505.02, a "final order" is defined as follows:

(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;

(2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;

. . .

(4) An order that grants or denies a provisional remedy and to which both of the following apply:

(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

{¶ 21} A "substantial right" is defined as "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02.

{¶ 22} We first consider whether, in the second and fourth assignments of error, the appointment of a receiver was a final appealable order. This court has held that, pursuant to R.C. 2505.02(B)(2), "proceedings in relation to the appointment and removal of receivers are special proceedings under R.C. 2505.02

and that orders for appointment and removal affect a substantial right made in a special proceeding. Such orders are, therefore, final and appealable." *Prudential Ins. Co. of Am. v. Corporate Circle*, 103 Ohio App.3d 93, 101 (8th Dist. 1995). Therefore, the trial courts' orders granting Fannie Mae's motions for appointment of a receiver in the Lument case and the foreclosure actions are final appealable orders.

{¶ 23} Next, we consider whether the appeal of the November 7, 2024 orders in the foreclosure actions are final appealable orders. The trial court's November 7, 2024 orders denied Clarkwood's and Granada's motions to vacate the appointment of a receiver and modified the receiver's bond. Although the initial appointment of a receiver is a final appealable order, this court has previously found that the denial of a motion to vacate the appointment of a receiver is not a final appealable order. *Hummer v. Hummer*, 2011-Ohio-3767, ¶ 8-9 (8th Dist.). "Ohio law makes it clear that the time to challenge the appointment of a receiver is at the time the appointment is made." *Id.* at ¶ 11. Therefore, the denial of Clarkwood's and Granada's motions to vacate the appointment of a receiver are not final appealable orders and we do not have jurisdiction to review that portion of the orders.

{¶ 24} The November 7, 2024 order in the foreclosure action also modified the receiver's bond and is the basis of Clarkwood and Granada's third assignment of error. This court has previously held that a subsequent journal entry specifically enumerating a receiver's duties is not a final appealable order. *Strauss v. Strauss*, 2009-Ohio-5493, ¶ 3 (8th Dist.). Other Ohio courts have uniformly held that

interim orders governing the ongoing administration of a receivership do not affect a substantial right and thus are not final appealable orders. *See Morgan v. Jones*, 2022-Ohio-1831, ¶ 10 (1st Dist.); *Gemmell v. Anthony*, 2015-Ohio-2550, ¶ 10 (4th Dist.). Clarkwood and Granada have not provided any legal authority supporting their assertion that an interim order modifying a receiver's bond is a final appealable order. Therefore, the portion of the court's November 7, 2024 order modifying the receiver's bond in the foreclosure actions is not a final appealable order. Because Clarkwood and Granada's third assignment of error does not contain a final appealable order, we do not have jurisdiction and the third assignment of error is overruled.

## B. Subject-Matter Jurisdiction

{¶ 25} In their first assignment of error, Clarkwood and Granada argue that the trial court judge in the foreclosure actions lacked subject-matter jurisdiction because there was already a pending matter involving the same parties and the same issues. At the time this appeal was filed, Clarkwood's and Granada's motions to dismiss for lack of subject-matter jurisdiction remained pending in the foreclosure actions.

{¶ 26} Clarkwood and Granada assert on appeal that when all three cases were consolidated for appellate purposes, the underlying cases were effectively consolidated and, thus, the first assignment of error became moot. However, Cuyahoga C.P., Gen.Div., Loc.R. 15(J) states that "[i]f a case disposed [of] by an assigned judge is reversed and remanded by an appellate court the case shall be

returned to the docket of the assigned judge." Any cases returned to the trial court on other grounds would likewise be returned to the trial court judge assigned at the time the notices of appeal were filed. In addition, only the trial court has jurisdiction to consolidate cases at the trial-court level. Cuyahoga C.P., Gen.Div., Loc.R. 15(H) states, in relevant part, that

> [p]ursuant to Civil Rule 42, when actions involving a common question of law and fact are pending in this court, *upon motion by any party*, the court may order a joint trial of any or all of the matters in issue; it may order all or some of the actions consolidated; and, it may make such orders concerning proceedings as may tend to reduce unnecessary costs or delay. The motion for consolidation shall be filed in all locations for which consolidation is sought.

(Emphasis added.) No party has filed a motion to consolidate the Lument case with the foreclosure actions. For these reasons, the three cases on review here will not be consolidated once they are returned to the trial court.

{¶ 27} Therefore, we consider Clarkwood and Granada's first assignment of error. In the first assignment of error, Clarkwood and Granada assert that pursuant to the jurisdictional priority rule, the trial court in the foreclosure action lacked subject-matter jurisdiction when it granted Fannie Mae's motion for appointment of a receiver. The Lument case was filed in the Cuyahoga County Common Pleas Court. The foreclosure actions were also filed in the Cuyahoga County Common Pleas Court. The jurisdictional priority rule does not apply when cases are pending in the same court. *State ex rel. Consortium for Economic & Community Dev. for Hough Ward 7 v. Russo*, 2017-Ohio-8133, ¶ 10. "[I]f two actions are pending in the same court before different judges, the parties have a method for vindicating those

interests that is not available when the cases are filed in different courts—a motion for consolidation." *Id.* Clarkwood and Granada do not dispute that the Cuyahoga County Common Pleas Court has subject-matter jurisdiction over both the Lument case and the foreclosure actions.

{¶ 28} We find that the Cuyahoga County Common Pleas Court has jurisdiction over both the Lument case and the foreclosure actions. Therefore, Clarkwood and Granada's first assignment of error is overruled.

## C. Appointment of a Receiver

{¶ 29} In their second and fourth assignments of error, Clarkwood and Granada assert that the trial court erred when they granted Fannie Mae's motions for appointment of a receiver.

{¶ 30} "It has long been recognized that the trial court is vested with sound discretion to appoint a receiver." *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 73 (1991). When exercising discretion in granting or denying a motion to appoint a receiver, a court ""must take into account all the circumstances and facts of the case, the presence of conditions and grounds justifying the relief, the ends of justice, the rights of all the parties interested in the controversy and subject matter, and the adequacy and effectiveness of other remedies."" *Debartolo v. Dussault Moving, Inc.*, 2011-Ohio-6282, ¶ 10 (8th Dist.), quoting *Gibbs* at 73, fn. 3, quoting 65 Am.Jur.2d, Receivers, § 19-20, 873, 874 (1972). Further, a court may consider the affidavits, admissions, and inferences that can be rationally drawn from these materials and from any arguments presented when making its decision. *Mehwald*

*v. Atlantic Tool & Die Co.*, 2023-Ohio-2778, ¶ 20 (8th Dist.), citing *Victory White Metal Co. v. N.P. Motel Sys.*, 2005-Ohio-2706, ¶ 53 (7th Dist.).

{¶ 31} The party seeking a receiver must show by clear and convincing evidence that the appointment of a receiver is necessary for the preservation of the movant's rights. *Haber Polk Kabat, L.L.P. v. Condominiums at Stonebridge Owners' Assn., Inc.*, 2017-Ohio-8069, ¶ 22 (8th Dist.). Clear and convincing evidence is

> the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.

*In re Estate of Haynes*, 25 Ohio St.3d 101, 104 (1986).

{¶ 32} On appeal, the standard when reviewing a trial court's order appointing a receiver is abuse of discretion. *Gibbs* at 73. An abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. An appellate court must not find an "abuse of discretion where some evidence supports the court's ruling." *State ex rel. Commercial Lovelace Motor Freight, Inc. v. Lancaster*, 22 Ohio St.3d 191, 193 (1986).

{¶ 33} R.C. 2735.01 governs the appointment of a receiver and states

> (A) A receiver may be appointed by the supreme court or a judge thereof, the court of appeals or a judge thereof in the judge's district, the court of common pleas or a judge thereof in the judge's county, or the probate court, in causes pending in such courts respectively, in the following cases:

(1) In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject property or a fund to the creditor's claim, or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff, or of a party whose right to or interest in the property or fund, or the proceeds of the property or fund, is probable, and when it is shown that the property or fund is in danger of being lost, removed, or materially injured;

(2) In an action by a mortgagee, for the foreclosure of the mortgagee's mortgage and sale of the mortgaged property, when it appears that the mortgaged property is in danger of being lost, removed, materially injured, diminished in value, or squandered, *or that the condition of the mortgage has not been performed*, and either of the following applies:

(a) The property is probably insufficient to discharge the mortgage debt.

(b) The mortgagor has consented in writing to the appointment of a receiver.

(3) To enforce a contractual assignment of rents and leases;

(4) After judgment, to carry the judgment into effect;

(5) After judgment, to dispose of the property according to the judgment, or to preserve it during the pendency of an appeal, or when an execution has been returned unsatisfied and the judgment debtor refuses to apply the property in satisfaction of the judgment;

(6) When a corporation, limited liability company, partnership, limited partnership, or other entity has been dissolved, is insolvent, is in imminent danger of insolvency, or has forfeited its corporate, limited liability company, partnership, limited partnership, or other entity rights;

(7) In all other cases in which receivers have been appointed by the usages of equity.

(Emphasis added.)

{¶ 34} Clarkwood and Granada asserted in all three cases, and continue to assert on appeal, that pursuant to R.C. 2735.01(A)(1), Fannie Mae was required to

show irreparable harm, i.e., that the mortgaged property was in danger of being lost, removed, materially injured, or diminished in value. They further contend that Fannie Mae failed to show a monetary default of the mortgage. However, Fannie Mae's motions sought the ex parte appointment of a receiver pursuant to R.C. 2735.01(A)(2), (A)(3), and (A)(7), and the language of the loan documents, none of which require Fannie Mae to establish irreparable harm or monetary default.

{¶ 35} As a preliminary matter, we address Clarkwood and Granada's assertion that the trial court erred when it granted Fannie Mae's motions for the ex parte appointment of a receiver because Fannie Mae was required to show irreparable harm. Section 3(e) of each set of loan documents in this case provides, in relevant part:

> If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Security Instrument, *expressly consents to the appointment of such receiver, including the appointment of a receiver ex parte, if permitted by applicable law. Borrower consents to shortened time consideration of a motion to appoint a receiver.*

(Emphasis added.)

{¶ 36} In *Solomon v. Solomon*, 2022-Ohio-2262 (8th Dist.), this court found that the movant was required to show irreparable harm prior to the ex parte appointment of a receiver. The parties in *Solomon* were a husband and wife in the midst of a divorce. The trial court appointed a receiver ex parte to manage investment properties the couple co-owned. The *Solomon* Court found that a trial court may grant an ex parte appointment of a receiver, meaning without notice of a

hearing, and before service has been perfected, only "upon a showing of irreparable harm and where there are allegations of fraud, insolvency, or imminent danger of harm to the property[.]" *Id.* at ¶ 17. However, *Solomon* did not involve a contract expressly consenting to the ex parte appointment of a receiver. This case does.

{¶ 37} In this case, the parties entered into a contract in which Clarkwood and Granada agreed in the separate loan documents that they "expressly consent[] to the appointment of such receiver, including the appointment of a receiver ex parte, if permitted by applicable law." This court has previously determined, in *Huntington Natl. Bank v. Prospect Park, LLC*, 2011-Ohio-5391 (8th Dist.), that waiver of the ex parte appointment of a receiver is permitted by Ohio law. The contract in *Huntington Natl. Bank* stated, in part, "[a]t any time following an Event of Default, Lender shall be entitled as a matter of right, without notice to Mortgagor . . ., to the appointment of a receiver for the benefit of Lender[.]" *Id.* at ¶ 3. This court found that notice and a hearing prior to the appointment of a receiver is waivable, stating:

> We recognize that the mortgage contained a provision for the appointment of a receiver without notice. Such provisions have been held to effectively waive the requirement that notice be given prior to the appointment of a receiver. *See Metro. Life Ins. Co. v. Triskett Illinois, Inc.* (1994), 97 Ohio App.3d 228, 236, 646 N.E.2d 528; *Mfrs. Life Ins. Co. v. Patterson* (1988), 51 Ohio App.3d 99, 101, 554 N.E.2d 134.. . .Likewise, it has been stated that "[t]he specific requirements set forth in R.C. 2735.01 may be effectively waived by the parties if such waiver is expressed in a mortgage provision." *Harajli Mgt. & Invest., Inc. v. A&M Invest. Strategies, Inc.,* 167 Ohio App.3d 546, 2006-Ohio-3052, 855 N.E.2d 1262, ¶ 57.

*Huntington Natl. Bank* at ¶ 11. *See also United States Bank Natl. Assn. v. Minnillo*, 2012-Ohio-5188, ¶ 15 (8th Dist.), citing *Huntington Natl. Bank* at ¶ 11. ("Provisions in mortgages for the appointment of a receiver without notice, such as the provision in the mortgage here, waived the requirements set forth in R.C. 2735.01.").

{¶ 38} The use of the term "ex parte" rather than the words "notice" or "without notice" in the loan documents does not change this outcome. The phrase "ex parte" is commonly used and by its definition an ex parte proceeding is one that takes place without notice to one party. *See In re Swader*, 2001 Ohio App. LEXIS 373, *11 (12th Dist. Feb. 5, 2001), citing *Dutton v. Dutton*, 127 Ohio App.3d 348, 352-353 (7th Dist. 1998.) ("[A]n ex parte proceeding is one that is usually held *without notice* to the opposing side.") (Emphasis added.); *In re Fluharty*, 2006-Ohio-6529, ¶ 10 (11th Dist.) ("An ex parte complaint, by definition, is one filed by or for one party *without notice* or challenge from the opposing party.") (Emphasis added.); *Keller v. Keller*, 2003-Ohio-6462, ¶ 27 (4th Dist.), citing *Black's Law Dictionary* (5th Ed. 1979) ("An 'ex parte' action is defined, in part, as an act done *without notice* to an adversely interested party.") (Emphasis added.); *State v. Boddie*, 2001 Ohio App. LEXIS 3969, *22 (3d Dist. Sept. 6, 2001), citing *Black's Law Dictionary* (6th Ed. 1990)("A judicial proceeding, order, injunction, etc., is said to be ex parte when it is taken or granted at the instance and for the benefit of one party only, and *without notice* to, or contestation by, any person adversely interested.") (Emphasis added.).

{¶ 39} By consenting to the ex parte appointment of a receiver in the event of a default of the mortgage, Clarkwood and Granada waived any preappointment notice requirement and any requirement that Fannie Mae show irreparable harm.

{¶ 40} Next, we consider Clarkwood and Granada's second assignment of error first, which addresses the order appointing a receiver in the foreclosure action. We address this order first because it was the first order appointing a receiver at the trial-court level and the first appealed to this court. Pursuant to R.C. 2735.01(A), a trial court can appoint a receiver pursuant to any one subsection of the statute. Therefore, we need not address each of the R.C. 2735.01(A) subsections asserted in Fannie Mae's motions. As discussed above, pursuant to the loan documents and R.C. 2735.01(A), any event of default would trigger Clarkwood and Granada's consent to the ex parte appointment of a receiver.

{¶ 41} The Clarkwood and Granada loan documents contain the following provisions:

> **"Event of Default"** means the occurrence of any event listed in Section 14.01 (Events of Default) of the Loan Agreement.
>
> **Section 14.01 Events of Default.**
>
> The occurrence of any one or more of the following in this Section 14.01 shall constitute an Event of Default under this Loan Agreement.
>
> **Automatic Events of Default.**
>
> . . .
>
> (10) any failure by Borrower to complete any Repair related to fire, life, or safety issues in accordance with the terms of this Loan Agreement within the Completion Period (or such other date set forth on the

Required Repair Schedule or otherwise required by Lender in writing for such Repair);

**Section 6.02 Covenants.**

**(a) Use of Property.**

From and after the Effective Date, Borrower shall not, unless required by applicable law or Governmental Authority:

(1) change the use of all or any part of the Mortgaged Property;

**(b) Property Maintenance.**

Borrower shall:

. . .

(3) commence all Required Repairs, Additional Lender Repairs, and Additional Lender Replacements as follows:

(A) with respect to any Required Repairs, promptly following the Effective Date (subject to Force Majeure, if applicable), in accordance with the timelines set forth on the Required Repair Schedule, or if no timelines are provided, as soon as practical following the Effective Date;

(B) with respect to Additional Lender Repairs, in the event that Lender determines that Additional Lender Repairs are necessary from time to time or pursuant to Section 6.03(c), promptly following Lender's written notice of such Additional Lender Repairs (subject to Force Majeure, if applicable), commence any such Additional Lender Repairs in accordance with Lender's timelines, or if no timelines are provided, as soon as practical;

(C) with respect to Additional Lender Replacements, in the event that Lender determines that Additional Lender Replacements are necessary from time to time or pursuant to Section 6.03(c), promptly following Lender's written notice of such Additional Lender Replacements (subject to Force Majeure, if applicable), commence any such Additional Lender Replacements in accordance with Lender's timelines, or if no timelines are provided, as soon as practical;

(4) make, construct, install, diligently perform, and complete all Replacements, Repairs, Restoration, and any other work permitted under the Loan Documents:

(A) in a good and workmanlike manner as soon as practicable following the commencement thereof, free and clear of any Liens, including mechanics' or materialmen's liens and encumbrances (except Permitted Encumbrances and mechanics' or materialmen's liens which attach automatically under the laws of any Governmental Authority upon the commencement of any work upon, or delivery of any materials to, the Mortgaged Property and for which Borrower is not delinquent in the payment for any such work or materials);

(B) in accordance with all applicable laws, ordinances, rules, and regulations of any Governmental Authority, including applicable building codes, special use permits, and environmental regulations;

(C) in accordance with all applicable insurance and bonding requirements; and

(D) within all timeframes required by Lender, and Borrower acknowledges that it shall be an Event of Default if Borrower abandons or ceases work on any Repair at any time prior to the completion of the Repairs for a period of longer than twenty (20) days (except when Force Majeure exists and Borrower is diligently pursuing the reinstitution of such work, provided, however, any such abandonment or cessation shall not in any event allow the Repair to be completed after the Completion Period, subject to Force Majeure); and

. . .

**(e) Compliance with Laws.**

Borrower shall:

(1) comply with all laws, ordinances, statutes, rules, and regulations of any Governmental Authority and all recorded lawful covenants and agreements relating to or affecting the Mortgaged Property, including all laws, ordinances, statutes, rules and regulations, and covenants pertaining to construction of improvements on the Land, fair housing, and requirements for equal opportunity, anti-discrimination, and Leases;

(2) procure and maintain all required permits, licenses, charters, registrations, and certificates necessary to comply with all zoning and

land use statutes, laws, ordinances, rules and regulations, and all applicable health, fire, safety, and building codes and for the lawful use and operation of the Mortgaged Property, including certificates of occupancy, apartment licenses, or the equivalent;

(3) comply with all applicable laws that pertain to the maintenance and disposition of tenant security deposits;

(4) at all times maintain records sufficient to demonstrate compliance with the provisions of this Section 6.02(e); and

(5) promptly after receipt or notification thereof, provide Lender copies of any building code or zoning violation from any Governmental Authority with respect to the Mortgaged Property.

{¶ 42} In the Clarkwood foreclosure action, Fannie Mae's October 17, 2024 motion for an ex parte appointment of a receiver asserted that several events of default occurred. First, they asserted that Clarkwood failed to complete all required repairs as listed in the June 13, 2024 notice and agreed upon by the amended loan agreement. The failure to complete the required repairs was considered a breach of the covenants under sections 6.02(b)(3) and 6.02(b)(4) of the loan agreement. One of the listed repairs involved concrete sidewalks, and the failure to repair the sidewalks was considered an automatic event of default under Section 14.01(a)(10) of the loan documents because it relates to a fire, life, or safety issue. Additional covenant breaches asserted by Fannie Mae were the failure to inform Fannie Mae of building code or zoning violations, which was a breach of section 6.02(e)(5) of the loan agreement, and demolishing garages without Fannie Mae's approval, which breached section 6.02(a) of the loan documents.

{¶ 43} In support of their motion for an ex parte appointment of receiver, Fannie Mae attached an affidavit executed by Joel Shaddox ("Shaddox"). In the

affidavit, Shaddox averred that he was employed as a senior asset manager for multifamily loss mitigation at Fannie Mae. Shaddox was tasked with overseeing the management and collection of the loan documents related to the Clarkwood Apartments and the Granada Apartments. Shaddox averred that Clarkwood failed to complete concrete repairs that related to a safety issue, failed to complete repairs as required by the June 13, 2024 notice, failed to notify Fannie Mae of building code or zoning violations in breach of section 6.02(e)(5), and demolished garages without Fannie Mae's approval in breach of section 6.02(a) of the loan agreement.

{¶ 44} In the Granada foreclosure action, Fannie Mae's ex parte motion for appointment of a receiver asserted several events of default occurred. Fannie Mae asserted that Granada failed to complete required repairs as outlined by their May 31, 2023 notice. They also asserted that one of the required repairs was the repair of balconies, exterior doors and fire doors, and smoke and carbon monoxide detectors. These repairs related to fire, life, and safety issues and thus were an automatic event of default under section 14.01(a)(10) of the loan agreement. Lastly, Fannie Mae asserted that Granada failed to comply with all laws, ordinances, statutes, rules, and regulations of any governmental authority that breached the covenants set forth in 6.02(e)(1) - (4) of the loan agreement, failed to notify Fannie Mae of building code or zoning violations that breached sections 6.02(e)(5) of the loan agreement, failed to notify Lument of a casualty or event of loss, and failed to remit the insurance proceeds to Lument that breached sections 6.02(e)(1) - (4), and

demolished garages without Fannie Mae's approval that breached sections 6.02(a) of the loan agreement.

{¶ 45} In support of their motion for an ex parte appointment of receiver in the Granada foreclosure action, Fannie Mae attached an affidavit executed by Shaddox. Shaddox averred that Granada committed each of the breaches of the loan agreement asserted by Fannie Mae in their motion.

{¶ 46} The record supports a finding by the trial court in the foreclosure actions that there was clear and convincing evidence that both Clarkwood and Granada committed breaches that amounted to events of default pursuant to the loan agreements. These events of default triggered the consent to the appointment of a receiver by both Clarkwood and Granada.

{¶ 47} For the reasons stated above, we find that the trial court in the foreclosure actions did not abuse its discretion when it granted Fannie Mae's ex parte motions for appointment of receivers pursuant to R.C. 2735.01(A)(2). Therefore, Clarkwood and Granada's second assignment of error is overruled.

{¶ 48} Because Clarkwood and Granada's fourth assignment of error involves the same parties, the same loan documents, and similar arguments as to the second assignment of error, we find that their fourth assignment of error is moot. Because we find that the fourth assignment of error moot, we find that the fifth assignment of error is moot as well.

{¶ 49} The trial court's order granting Fannie Mae's appointment of a receiver in the foreclosure actions is affirmed.

It is ordered that appellee recover of appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

EMANUELLA D. GROVES, P.J., CONCURS;
SEAN C. GALLAGHER, J., DISSENTS (WITH SEPARATE OPINION)

SEAN C. GALLAGHER, J., DISSENTING:

{¶ 50} Fannie Mae failed to demonstrate the necessity of an ex parte proceeding to appoint the receiver in its foreclosure actions (the two later trial court cases of the three under review), thereby depriving the defendants of the opportunity to timely respond as these three separate cases unfolded. That decision set the stage for a convoluted procedural history leading Fannie Mae to circumvent the stay issued by this court by reasserting the receivership claims with the second trial court while the appeals in the foreclosure cases were pending. Because of that and the second trial court's conclusion being based on unsubstantiated allegations of default, I cannot join the majority in affirming.

{¶ 51} I acknowledge that the allegations are concerning, but our focus in this appeal is on the procedural aspects of appointing receivers under R.C.2735.01.

## I. The Ex Parte Proceedings

{¶ 52} In short, when a mortgagee in this situation, such as the one in which Fannie Mae found itself, seeks to have a receiver appointed, they must meet the statutory criteria of R.C. 2735.01(A)(2)(b), which requires some evidence of a default event and consent to the receivership. Although Clarkwood and Granada Apartments consented to the appointment of a receiver in this case, it was contingent on a default occurrence, a question of fact they dispute. In seeking a receiver, ex parte proceedings are permitted; but in addition to the statutory requirements, the requesting party must demonstrate irreparable harm justifying the expediency. There is an exception to the irreparable-harm component if the mortgagor has contractually waived notice. This case involves a contractual provision that authorizes the ex parte appointment of a receiver, but only as permitted by law. Clarkwood and Granada Apartments did not waive notice. They were entitled to that before the trial court initially appointed the receiver based on claims of default, unless Fannie Mae demonstrated irreparable harm.

{¶ 53} The law behind that reasoning is relatively settled. A trial court may appoint a receiver through ex parte proceedings "only upon a showing of irreparable harm," which is in addition to which ever factor applies under R.C. 2735.01(A)(1)-(7) for the purposes of appointing the receiver. *See Solomon v. Solomon,* 2022-Ohio-2262, ¶ 17 (8th Dist.), citing *Mfrs. Life Ins. Co. v. Patterson*, 51 Ohio App.3d 99, 100 (8th Dist. 1988), and *DK Prods. v. Miller*, 2009-Ohio-436, ¶ 13 (12th Dist.); *see also Leight v. Osteosymbionics, L.L.C.*, 2017-Ohio-5749, ¶ 32 (8th Dist.). No

provision of R.C. 2735.01 requires the party requesting a receiver to demonstrate irreparable harm, and no provision provides the procedure for an ex parte proceeding. Thus, that irreparable-harm element is solely based on the ex parte nature of the request. *See Solomon* at ¶ 17.

{¶ 54} Fannie Mae's motions for the appointment of the receiver in the foreclosure actions failed to articulate any basis for the ex parte expediency and for depriving defendants of their right to notice before the trial court exercised its jurisdiction. Accordingly, the trial court had not been presented with arguments justifying the ex parte appointment of a receiver. *See Snyder v. Old World Classics, L.L.C.*, 2025-Ohio-1875, ¶ 4 ("[O]ur judicial system relies on the principle of party presentation, and courts should ordinarily decide cases based on issues raised by the parties."), quoting *Epcon Communities Franchising, L.L.C. v. Wilcox Dev. Group, L.L.C.*, 2024-Ohio-4989, ¶ 15.

{¶ 55} And further, Fannie Mae has not argued, let alone established, that Clarkwood and Granada Apartments expressly waived their right to that notice. *See Huntington Natl. Bank v. Prospect Park*, 2011-Ohio-5391, ¶ 3 (8th Dist.). Even if it had made the argument, however, it does not appear that the particular contractual provision in this case contains an express waiver of notice, and no other citation to a waiver provision was provided. There is a difference between agreeing to an ex parte proceeding as permitted by law, which requires a showing of irreparable harm, and agreeing that no notice is needed for the appointment of the receiver.

Waiving notice obviates the need to demonstrate irreparable harm during an ex parte proceeding.

{¶ 56} In *Prospect Park*, for example, the parties contractually agreed that "[a]t any time following an Event of Default, Lender shall be entitled as a matter of right, *without notice* to Mortgagor * * *, to the appointment of a receiver for the benefit of Lender . . . ." (Emphasis added.) *Id.* In that context, the panel noted, in dicta, that such a waiver authorized the ex parte proceedings, but regardless of that waiver, the responding party was permitted to file a responsive brief on the need for a receiver. *Id.* The notice provision was not relevant to the outcome. *Id.* at ¶ 4. The sole issue was whether a hearing was required. It is nonetheless acknowledged that when a mortgagor expressly waives notice to the appointment of a receiver, that contractual provision may be enforced through an ex parte proceeding. *See United States Bank Natl. Assn. v. Minnillo*, 2012-Ohio-5188, ¶ 8 (8th Dist.) (the ex parte proceeding was authorized because the mortgagor agreed that "in event of default and without regard to the adequacy of the security for the Note, without regard to the Minnillos' solvency, and *without prior notice* . . .").

{¶ 57} In this case, the contractual language does not contain an express waiver of notice as addressed in *Prospect Park* and *Minnillo*, but instead the parties agreed to the appointment of a receiver, "including the appointment of a receiver ex parte, *if permitted by applicable law* [and] Borrower consents to shortened time consideration of a motion to appoint a receiver." (Emphasis added.) That provision does not expressly waive the notice requirement; it merely permits

the mortgagee to pursue an ex parte proceeding if permitted by law, which in this case requires the additional showing of irreparable harm, and agrees to some type of fast-tracked consideration of a motion, which does not obviate the required notice. On this point, Fannie Mae's argument that irreparable harm is not a necessary element for the appointment of the receiver should be deemed to be without merit.

{¶ 58} Fannie Mae has not argued, let alone demonstrated, that Clarkwood or Granada Apartments waived their right to notice, and because the applicable law includes an additional component of irreparable harm in addition to the R.C. 2735.01(A)(1)-(7) factors in order to obtain an ex parte appointment of a receiver, the trial court in the foreclosure cases should have afforded the defendants an opportunity to respond before appointing the receiver.[4]

{¶ 59} The trial court's decision granting the appointment of a receiver without any basis to demonstrate the necessity of an ex parte proceeding depriving the mortgagors of their right to notice, was legally erroneous, and therefore, constitutes an abuse of discretion. *See Solomon*; *see also Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 39 (a trial court lacks discretion to commit errors of law).

---

[4] The trial court in the foreclosure cases denied the motion to vacate the appointment of a receiver concluding that there was irreparable harm. That after-the-fact conclusion does not change the result. In this appeal, Fannie Mae, the City of Warrensville Heights, and the Granada Garden Tenants Association all argue that irreparable harm is not an element under R.C. 2735.01(A). Although a true statement, as explained in full, the ex parte nature of the proceeding is the triggering event for the irreparable-harm analysis. The statute itself does not authorize an ex parte proceeding.

Although I disagree with the reliance on the ex parte orders to justify the appointment of the receiver, that does not end my analysis.

## II. The Second Attempt to Appoint a Receiver

{¶ 60} The question that remains is whether that error is dispositive in light of a subsequent proceeding involving the same and additional parties before another trial court judge, a proceeding in which all parties were able to participate and present arguments — negating the need to demonstrate irreparable harm since only the statutory requirements were at issue. I would find that it is because the second trial court appointed a receiver based on unsubstantiated allegations of default. The default of the mortgage contract is a necessary prerequisite to invoking the consent clause under R.C. 2735.01(A)(2)(b). Because there is no evidence supporting the finding of default relied on by the trial court in this record, I cannot join in affirming the outcome.

{¶ 61} In February 2025, this court stayed enforcement of the receivership in the foreclosure cases filed by Fannie Mae. Less than a month after this court stayed execution of the receiver appointment in the foreclosure actions, Fannie Mae filed a motion to appoint the same receiver in the lowest case number, CV-24-104487, which was pending before another trial court judge and outside our then jurisdiction over the foreclosure cases.[5] Clarkwood and Granada Apartments, at the thinly veiled suggestion of the trial court that held a then-pending motion to dismiss in abeyance

---

[5] The City of Warrensville Heights and the Granada Garden Tenants Association joined that request based on Fannie Mae's arguments.

at the same time as granting leave to amend the complaint, had filed an amended complaint naming Fannie Mae as a defendant in February 2025, roughly the same time as the stay of the receiver appointment occurred in the foreclosure appeals. This caused the claims from the stayed foreclosure actions to be largely duplicated.

{¶ 62} In that motion to appoint a receiver, Fannie Mae relied on news articles and stories pre- or post-dating the foreclosure actions and information obtained from the receiver who had been appointed ex parte. As the trial court noted, other than the information obtained from the receiver appointed by the other trial court, "[t]he motion in this case is essentially the same motion granted in the other two cases and stayed on appeal . . . ." The trial court did not rely on any of that new information. According to the trial court, the allegation regarding the guarantor's criminal proceeding in federal court and the transfers of ownership from two years predating Fannie Mae's claims were the only facts upon which the stay was granted. Fannie Mae, however, failed to include any evidence of those events upon which a default finding could be tentatively made for the purposes of R.C. 2735.01(A)(2)(b).

{¶ 63} In this appeal, Fannie Mae claims that the trial court could take judicial notice of the federal court proceedings and because "Appellants have never denied this assertion, and Appellants have not presented any admissible evidence to establish that notice was provided[,]" we should affirm. There are two problems with that argument. First, the existence of the unrelated criminal proceeding against the guarantor does not demonstrate a breach in and of itself. And second, it is well

settled that the mortgagee requesting the appointment of the receiver based on a default event bears the burden of demonstrating its factual assertions with some evidence, even if by affidavit. The unsupported allegations regarding the guarantors of the loans and failure to notify Fannie Mae of transfers is not substantiated with any evidence in this record. Because that is the only basis upon which the second appointment of the receiver was granted, I would find the trial court erred by granting the motion to appoint a receiver the second time around.

### III. Conclusion

{¶ 64} For these reasons, I respectfully dissent. I would reverse the decisions appointing the receiver and remand this case to the trial court for a hearing after the parties consolidate the three separate actions into one court to avoid duplicative proceedings.